**Affirmed and Memorandum Opinion filed December 21, 2018.**



In The

# 𝕱𝖔𝖚𝖗𝖙𝖊𝖊𝖓𝖙𝖍 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘

## NO. 14-17-00505-CV

**RED BLUFF, LLC, Appellant**

**V.**

**NICOLE TARPLEY, Appellee**

**On Appeal from the 55th District Court
Harris County, Texas
Trial Court Cause No. 2016-50146**

## M E M O R A N D U M     O P I N I O N

Appellant Red Bluff, LLC appeals the trial court's interlocutory order denying its motion under the Federal Arbitration Act (FAA) to compel arbitration of the claims appellee Nicole Tarpley asserted against it.[1] In a single issue with multiple sub-parts,

---

[1] *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.016 (West 2015) (party may appeal from an interlocutory order of a district court "under the same circumstances that an appeal from a federal district court's order . . . would be permitted by 9 U.S.C. Section 16.").

Red Bluff contends the trial court erred in denying its motion to compel arbitration because it is entitled to enforce the arbitration clause as a third-party beneficiary and under principles of estoppel, and because the trial court erred in concluding Red Bluff failed to prove it opted into the agreement containing the clause.

We overrule Red Bluff's issue. Red Bluff did not assert in the trial court that it is a third-party beneficiary, so that argument is not preserved for our review. Nor can Red Bluff rely on estoppel to enforce the agreement because Tarpley has not made an inconsistent statement and does not rely on the agreement containing the arbitration provision for her claims. Finally, the trial court correctly concluded that Red Bluff failed to establish that the expressly stated procedure for opting into the agreement containing the arbitration clause was followed. We therefore affirm the trial court's order denying the motion to compel.

## BACKGROUND

Red Bluff d/b/a Courtyards of Pasadena employed Tarpley as a nurses' aide at its facility in Pasadena. Upon her hire, Tarpley executed a Plan Enrollment and Arbitration Agreement. In doing so, Tarpley enrolled in the Employee Injury Benefit Plan (the Plan) offered by Red Bluff's parent company, THI of Texas, LLC. The Plan is offered in lieu of workers' compensation insurance to employees of THI and THI's affiliates that adopt the Plan. The Plan provides that an affiliate may adopt the Plan, thus becoming a defined Employer,[2] through the following procedure:

> 8.1  Adoption Procedure. Any subsidiary or affiliate of an Employer may become an Employer under this Plan provided that:
>
> (a)  The Board of Directors or other governing body of the Company [defined as THI] approves the adoption of the Plan by the

---

[2] The Plan defines Employer as "the Company [THI] and each of its affiliates which adopt this Plan."

subsidiary or affiliate and designates such subsidiary or affiliate as an Employer; and

(b) The subsidiary or affiliate adopts the Plan together with all amendments then in effect by appropriate resolutions of the Board of Directors or other governing authority of the subsidiary or affiliate.

8.2 Effect of Adoption by Employer. Any subsidiary or affiliate of an Employer which adopts the Plan shall be deemed to be an Employer for purposes of this Plan, unless otherwise specified in the resolutions of the Board of Directors of the Company designating the subsidiary or affiliate as an Employer.

A Summary Plan Description given to employees states that each employee who desires to participate in the Plan must sign and deliver the Plan Enrollment and Arbitration Agreement, thereby agreeing "to arbitrate all claims relating to the Accident and your Injury, Cumulative Trauma or Occupational Disease, including claims of Employer negligence." The Plan Enrollment and Arbitration Agreement contains the following details regarding the arbitration:

> THI of Texas, LLC ("Company") ("Employer") maintains an Employee Injury Benefit Plan (the "Plan") to pay benefits to Participants due to injuries or illnesses incurred in the course and scope of employment with Company or affiliates of Company who adopt the Plan.
>
> * * *
>
> By signing this Agreement, the Employer and I each agree to binding arbitration of all claims and disputes described hereafter, whether these claims and disputes exist now or arise in the future. . . . The claims, disputes and allegations subject to binding arbitration under this Agreement include my claims involving Employer, as well as Employer's claims against me, for:
>
> 1. Employer's negligence, gross negligence, strict liability, intentional act, omission or any other claim or cause of action with respect to any employment-related injuries, trauma or illness;
>
> 2. Tort claims (including, but not limited to, any claims for bodily injury or physical, mental or psychological injury) for injuries, trauma or illness I may sustain in the course and scope of my employment;

3

* * *

The appeal of a full or partial denial of benefits under the Plan is not covered by this Agreement.

The enrollment sheet is signed by Tarpley and THI.[3]

Tarpley alleges she was performing her duties and was injured while helping transfer a patient from a bed to a wheelchair. After her injury, Tarpley received benefits under the Plan in the amount of $3,283.15. She also filed this lawsuit against Red Bluff for damages, alleging that Red Bluff caused her injury and asserting the following claims: negligence under a theory of premises liability, negligence per se, and gross negligence.

Red Bluff moved to compel arbitration of Tarpley's claims pursuant to the provisions of the Plan Enrollment and Arbitration Agreement. Red Bluff explained that as a non-subscriber to workers' compensation, it offers benefits pursuant to the Plan and Tarpley enrolled in the Plan. Red Bluff argued that as an affiliated entity of THI, it falls within the definition of "Employer" under the Plan and is thus entitled to enforce the arbitration agreement as a non-signatory. Red Bluff also asserted that direct-benefits estoppel allowed it to enforce the arbitration provision against Tarpley because she had accepted benefits under the Plan. Finally, Red Bluff asserted the agreement was not against public policy because Tarpley was not coerced or under duress when she joined and accepted benefits from the Plan.

Tarpley opposed the motion to compel arbitration, contending, among other things, that Tarpley and Red Bluff had no agreement to arbitrate. According to Tarpley, the arbitration agreement is between THI and Tarpley only, and Red Bluff cannot argue

---

[3] The Enrollment Sheet and Arbitration Agreement provides that arbitration under the agreement is governed by the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-14. Neither party to this appeal disputes the FAA's application.

4

it falls within the definition of Employer contained in the Plan because the Plan does not incorporate the Plan Enrollment and Arbitration Agreement (or vice versa). Tarpley also argued Red Bluff does not fall within the definition of Employer in the Plan because there is no evidence that Red Bluff followed the requirements to adopt the Plan. Tarpley contended estoppel is inapplicable because she does not assert any claim or seek any benefit under the Plan in this lawsuit.

At the hearing on the motion to compel arbitration, the trial court expressed concern that Red Bluff had presented no evidence that it had actually adopted the Plan. The trial court allowed Red Bluff a short amount of time to file such evidence. Red Bluff responded with an affidavit signed by its Administrator, Adeyemi O. Alabi-Isama, stating that "Red Bluff has adopted the Plan and all if [sic] its amendments." Red Bluff provided no corporate resolutions or board approval documents regarding adoption of the Plan. Tarpley objected to the affidavit as conclusory. The trial court agreed the affidavit was conclusory and signed an order denying the motion to compel arbitration. The trial court expressly stated in the order that "[t]he operative documents indicate clearly that Defendant [Red Bluff] must affirmatively opt in to the arbitration agreement. Defendant offers an entirely conclusory affidavit that its Board opted in but offers nothing in support." This appeal followed.

## ANALYSIS

Red Bluff argues on appeal that the trial court's focus on whether Red Bluff opted into to the arbitration agreement is not dispositive of its right to compel arbitration for three reasons: (1) Red Bluff is a third-party beneficiary of the arbitration agreement; (2) Tarpley is estopped from denying the agreement; and (3) Red Bluff conclusively established that it opted into the Plan and is thus an Employer entitled to enforce the arbitration agreement. For the reasons discussed below, we conclude the

5

trial court acted within its discretion in denying the motion to compel.

## I.      Standard of review and applicable law

We review the trial court's order denying Red Bluff's motion to compel arbitration under an abuse-of-discretion standard, deferring to the trial court on factual determinations that are supported by the evidence and reviewing legal determinations de novo. *See Perry Homes v. Cull*, 258 S.W.3d 580, 598 (Tex. 2008); *Smart Call, LLC v. Genio Mobile, Inc.*, No. 14-13-00223-CV, 2014 WL 3955083, at *4 (Tex. App.—Houston [14th Dist.] Aug. 14, 2014, pet. denied) (mem. op.).  A party seeking to compel arbitration has the burden first of establishing the existence of a valid arbitration agreement.  *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753 (Tex. 2001). A trial court's determination regarding the existence of an agreement is a legal question that we review de novo.  *Jody James Farms, JV v. Altman Group, Inc.*, 547 S.W.3d 624, 633 (Tex. 2018); *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003).

In determining whether an agreement to arbitrate exists, courts apply ordinary principles regarding contract formation.  *See J.M. Davidson*, 128 S.W.3d at 227-28 ("Arbitration agreements are interpreted under traditional contract principles.").  The primary concern in construing the contract is to ascertain the intention of the parties as expressed in the agreement.  *Jody James Farms*, 547 S.W.3d at 633 ("Who is bound by an arbitration agreement is normally a function of the parties' intent, as expressed in the agreement's terms.").

Ordinarily, only signatories to an arbitration agreement may enforce its provisions.  *See G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 524 (Tex. 2015).  Non-signatories seeking to compel arbitration must "establish that they have a valid legal right to enforce the . . . arbitration agreement even though they are

6

not parties to that contract." *Id.* Courts have noted six situations in which arbitration agreements may be enforced by non-signatories: (1) incorporation by reference, (2) assumption, (3) agency, (4) alter ego, (5) equitable estoppel, and (6) third-party beneficiary. *Jody James Farms*, 547 S.W.3d at 633.

The evidentiary standards applicable to a motion to compel arbitration are the same as those applicable to a motion for summary judgment. *In re Estate of Guererro*, 465 S.W.3d 693, 703 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) (en banc). Thus, a party moving to compel arbitration must present complete summary proof that an agreement to arbitrate exists and requires arbitration of the dispute. *Id.*

## II.     Red Bluff did not establish a valid basis for compelling arbitration.

### A.     Red Bluff did not argue in the trial court that it is a third-party beneficiary of the arbitration agreement.

It is undisputed that Red Bluff is not a signatory to the arbitration agreement. Instead, it argues on appeal that it is entitled to enforce the agreement as a third-party beneficiary. Tarpley responds that Red Bluff did not preserve this argument in the trial court.

We agree with Tarpley that Red Bluff did not preserve its argument that it can enforce the agreement as a third-party beneficiary. In its motion to compel, Red Bluff argued that it is entitled to enforce the agreement because it is an affiliate of THI, thus bringing it within the definition of Employer for purposes of arbitration. It did not mention anywhere in its motion that it purported to be a third-party beneficiary of the agreement or that it was entitled to third-party beneficiary status under the agreement. As a result, the third-party beneficiary argument may not be raised for the first time on appeal. *See* Tex. R. App. P. 33.1; *Carr v. Main Carr Dev., LLC*, 337 S.W.3d 489, 494 (Tex. App.—Dallas 2011, pet. denied); *see also Garcia v. Alvarez,* 367 S.W.3d 784, 788 ((Tex. App.—Houston [14th Dist.] 2012, no pet.) (party's argument on appeal must

7

comport with its argument in the trial court).

In its reply brief, Red Bluff argues that although its motion did not expressly use the phrase "third-party beneficiary," the motion "describes a third party beneficiary claim" because "Red Bluff expressly argued it was entitled to compel arbitration as an affiliate of THI pursuant to an arbitration agreement for its own employees."[4] We disagree that this language preserved an argument that Red Bluff is a third-party beneficiary. Red Bluff's status as an affiliate of THI does not automatically make it a third-party beneficiary under the agreement. To establish its right to enforce the agreement as a third-party beneficiary, Red Bluff must prove that "the parties to the contract intended to secure a benefit to [Red Bluff] and entered into the contract directly for [Red Bluff's] benefit." *Jody James Farms*, 547 S.W.3d at 635 (internal quotations omitted). The intent must be more than incidental, and it must be clearly and fully spelled out in the agreement. *See id.* (concluding a contract's description of its intended use cannot—on its own—confer third-party-beneficiary status). "A court will not create a third-party beneficiary contract by implication." *MCI Telecomm. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 651 (Tex. 1999).

Red Bluff's argument in the trial court was that it met the definition of an affiliate of THI and thus fell within the definition of an Employer entitled to enforce the

---

[4] Red Bluff also states in its reply brief that its motion to compel pre-dated the Supreme Court of Texas's decision in *First Bank v. Brumitt*, 519 S.W.3d 95 (Tex. 2017), by a mere ten days. To the extent Red Bluff contends by this statement that it did not need to raise the third-party beneficiary claim in the trial court because the *Brumitt* opinion had not yet issued, we reject the contention. The doctrine of third-party beneficiary as a means of enforcing an arbitration agreement was recognized by several courts prior to the issuance of the *Brumitt* opinion. *See, e.g.*, *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 739 (Tex. 2005); *Carr*, 337 S.W.3d at 495. The *Brumitt* court addressed whether a court could consider extrinsic evidence in determining whether a person is a third-party beneficiary of an unambiguous, written contract. *See First Bank*, 519 S.W.3d at 106–10. The *Brumitt* case did not involve an arbitration agreement. *See id.*

agreement under *In re Rubiola*, 334 S.W.3d 220 (Tex. 2011).[5] Red Bluff did not argue anywhere that THI and Tarpley executed the agreement for Red Bluff's express benefit. The argument Red Bluff advances on appeal is different from its argument in the trial court. As a result, Red Bluff failed to preserve its argument for compelling arbitration as a third-party beneficiary. *See Garcia*, 367 S.W.3d at 788.

## B. Tarpley is not estopped to deny arbitration.

Red Bluff next asserts two estoppel grounds for compelling arbitration: (1) Tarpley's admission that Red Bluff is her employer; and (2) Tarpley's acceptance of benefits under the Plan. Neither ground establishes Red Bluff's right to compel arbitration.

First, Red Bluff points to Tarpley's statements in her petition as a judicial admission that "she was an 'employee' of Red Bluff, who injured her by failing to maintain a safe work environment for its 'employees.'" Red Bluff argues that Tarpley has taken an inconsistent position by admitting she is a Red Bluff employee while denying that Red Bluff is her "employer" under the arbitration provision. Red Bluff cites no authority supporting its claim that a purported inconsistent statement by the party resisting arbitration would allow a non-signatory to compel arbitration. In any event, Tarpley's statements that she is an employee of Red Bluff is not inconsistent with her position that Red Bluff is not a *defined* "Employer" for purposes of the arbitration provision. (The latter is a matter of contract interpretation.) Tarpley's statements do not support Red Bluff's estoppel argument. *Cf. Trelltex, Inc. v. Intecx, L.L.C.*, 494 S.W.3d 781, 790 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (waiver requires proof of party's intent to relinquish a right or conduct inconsistent with right).

Second, under the theory of direct-benefits estoppel, a party may be compelled

---

[5] As we explain in the next section, *In re Rubiola* does not support Red Bluff's argument that it meets the definition of Employer under the Plan.

9

to arbitrate a claim "if it seeks, through the claim, to derive a direct benefit from the contract containing the arbitration provision." *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 741 (Tex. 2005); *see Cooper Indus., LLC v. Pepsi-Cola Metro. Bottling Co.*, 475 S.W.3d 436, 442 (Tex. App.—Houston [14th Dist.] 2015, no pet.). We look to the substance of the claim, not artful pleading, to determine whether a party seeks a benefit from a contract containing an arbitration provision. *Carr*, 337 S.W.3d at 498-99. When the substance of the claims arises from general obligations imposed by state law, including tort or other common-law duties, direct-benefits estoppel does not apply. *Jody James Farms*, 547 S.W.3d at 637. This result holds true even if the claim refers to the contract or would not have arisen "but for" the contract's existence. *Id.*; *G.T. Leach Builders*, 458 S.W.3d at 528.

Red Bluff has not established that Tarpley's claims rely on or seek benefits from the Plan. In her petition, Tarpley does not base any of her claims on the Plan. She does not contend that Red Bluff violated the Plan in any respect. Instead, Tarpley contends Red Bluff violated common-law duties to provide a safe workplace, train her, and warn her of the alleged condition of a wheelchair. These claims would exist even if Tarpley had not executed or received benefits under the Plan. Tarpley's claims are independent of the Plan and rely on general, non-contractual duties. *See Jody James Farms*, 547 S.W.3d at 638. Therefore, direct-benefits estoppel does not apply. *Id.*

## C.    Red Bluff failed to establish that it opted into the agreement.

Finally, and in the alternative, Red Bluff argues that it conclusively proved it opted into the Plan and related arbitration agreement. We agree with the trial court's conclusion that "the operative documents indicate clearly that [Red Bluff] must affirmatively opt in to the arbitration agreement." That is, under the Plan's express provisions, Red Bluff's status as a subsidiary of THI does not make it an "Employer" under the Plan. Instead, Red Bluff had the burden of establishing that it became an

10

"Employer" under the express procedure stated in the Plan.

The Plan defines "Employer" as "the Company and each of its affiliates which adopt this Plan." An adoption procedure for affiliates is set forth in Section 8.1. The procedure requires two steps: (a) THI's board must approve the affiliate's adoption of the Plan and designate it as an Employer; and (b) the affiliate must adopt the Plan with all amendments then in effect by appropriate resolutions of its board. Under the express language of the Plan, affiliates are not automatically given the status of Employer. To allow Red Bluff rights under the Plan as an Employer without establishing that the adoption procedure was followed would fail to give effect to all provisions in the contract. *See MCI Telecomm.*, 995 S.W.2d at 652.

Red Bluff cites *In re Rubiola*, 334 S.W.3d 220 (Tex. 2011), and *Sherer v. Green Tree Servicing LLC*, 548 F.3d 379, 382 (5th Cir. 2008), in support of its contention that Red Bluff is "an employer entitled to compel arbitration." Both cases involved different and broader contract language than the language in the Plan. In *Rubiola*, the definition of parties entitled to enforce the arbitration provision expressly included "individual partners, affiliates, officers, directors, employees, agents, and/or representatives of any party to such documents and shall include any other owner and holder of this agreement." 334 S.W.3d at 222–23. The supreme court held that "[t]he arbitration agreement expressly provides that certain non-signatories are considered parties," including officers and representatives of the company that signed the agreement, and thus the officers were "non-signatory parties to the arbitration agreement under the agreement's terms." *Id.* at 224-25. Likewise, in *Scherer*, the Fifth Circuit held that the non-signatory lender could enforce an arbitration agreement in the loan documents because "[a]ccording to the broad terms of the Loan Agreement, Sherer has agreed to arbitrate any claims arising from 'the relationships which result from th[e] [a]greement.' A loan servicer, such as Green Tree, is just such a 'relationship.'"

11

548 F.3d at 382.

In this case, Tarpley agreed to arbitrate her claims with an "Employer" as defined under the Plan. The Summary Plan Description states: "Pursuant to the agreement, you and Employer agree to arbitrate all claims relating to the Accident and your Injury . . . ." The Plan Enrollment and Arbitration Agreement states: "By signing this Agreement, the Employer and I each agree to binding arbitration of all claims and disputes described hereafter, whether these claims and disputes exist now or arise in the future." Under the Plan, Employer is defined to include those affiliates of THI that have adopted the Plan. Absent competent evidence that Red Bluff adopted the Plan according to the adoption procedure set forth in the Plan, Red Bluff is not a "non-signatory part[y] to the arbitration agreement under the agreement's terms." *Rubiola*, 334 S.W.3d at 225.

Tarpley argues that even had Red Bluff become a defined "Employer" under the adoption procedure provided in the Plan, it would not be entitled to arbitration because the Plan Enrollment and Arbitration Agreement is a separate document from the Plan, there is no language of incorporation by reference, and the Plan Enrollment and Arbitration Agreement defines "Employer" only as THI. According to Tarpley, we cannot look to the Plan for the definition of "Employer." We disagree. The arbitration provision is contained in the document titled Plan Enrollment and Arbitration Agreement. It expressly references the Plan, recognizes that affiliates of THI may adopt the Plan, and makes execution of the Plan Enrollment and Arbitration Agreement a condition of the employee's enrollment in the Plan. The Plan and the Plan Enrollment and Arbitration Agreement are thus part of the same transaction, and we construe them together to allow a THI affiliate who follows the adoption procedure to be deemed an "Employer" for purposes of the arbitration provision. *See Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 840 (Tex. 2000) (describing "well-established law" that instruments pertaining to the same transaction may be read together to

12

ascertain the parties' intent, even if executed at different times and instruments do not expressly refer to each other).

We therefore consider whether Red Bluff conclusively proved that it became an "Employer" under the adoption procedure specified in the Plan. The affidavit submitted by Red Bluff stated that "Red Bluff has adopted the Plan and all of its amendments." Red Bluff challenges the trial court's decision to disregard the affidavit as conclusory. We need not decide whether the trial court was correct because even if the affidavit is considered, it fails to meet Red Bluff's burden of establishing that the adoption procedure was followed.

As noted above, the Plan sets forth the required two-step procedure for its adoption by a subsidiary such as Red Bluff.[6] First, the THI board must "approve[] the adoption of the Plan by the subsidiary . . . and designate[] [it] as an Employer . . . ." Second, the subsidiary must "adopt[] the Plan together with all amendments then in effect by appropriate resolutions of the Board of Directors or other governing authority of the subsidiary . . . ."

The affidavit submitted by Red Bluff addresses only a part of the second required step: whether Red Bluff adopted the Plan. The affidavit does not address whether Red Bluff had been approved and designated by THI's board, nor does it state that Red Bluff's board or governing body had adopted the Plan by appropriate resolutions of its board. The affidavit also does not contain any facts from which a court could conclude that these steps of the required procedure were carried out.[7] Because the affidavit does

---

[6] In its brief, Red Bluff states "[t]here is no formal requirement in the Plan documents regarding how Red Bluff is permitted to opt in under the Plan. Rather, the plain language merely requires the Board of Directors for Red Bluff to designate itself as an employer and 'approve [] the adoption of the Plan.'" This argument is contrary to the express procedure set forth in the Plan for its adoption by subsidiaries and affiliates of THI, which does not simply permit Red Bluff to designate itself.

[7] On appeal, Red Bluff cites cases addressing the personal knowledge requirement to argue

not address steps required for Red Bluff to become an "Employer" under the Plan, Red Bluff did not meet its burden of establishing it was an "Employer" entitled to invoke the arbitration provision, and the trial court did not abuse its discretion in denying the motion to compel. *See Guerrero*, 465 S.W.3d at 708 ("We conclude the trial court did not abuse its discretion in denying Champion's motion to compel arbitration because Champion failed to meet its burden to establish the existence of an arbitration agreement.").

## CONCLUSION

We overrule Red Bluff's issue on appeal and affirm the trial court's order denying Red Bluff's motion to compel arbitration.


/s/    J. Brett Busby
        Justice


Panel consists of Chief Justice Frost and Justices Busby and Wise.

---

the affidavit was sufficient. *See, e.g.*, *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 224 (Tex. 2004) (holding privilege-log affidavit sufficient because "an affiant's acknowledgment of the sources from which he gathered his knowledge does not violate the personal knowledge requirement"); *Martinez v. Hays Constr., Inc.*, 355 S.W.3d 170, 178-79 (Tex. App.—Houston [1st Dist.] 2011, no pet.), *disapproved on other grounds by Gonzalez v. Ramirez*, 463 S.W.3d 499, 504 (Tex. 2015) (discussing personal knowledge requirement and holding corporate representative can gather knowledge from other corporate sources); *Asshauer v. Glimcher Realty Trust*, 228 S.W.3d 922, 926 (Tex. App.—Dallas 2007, no pet.) (holding corporate representative affidavit sufficient where affiant stated basis of knowledge was review of business records and documents). But the decisive shortcoming of Red Bluff's affidavit in this case is not the lack of personal knowledge of its affiant, it is the lack of facts supporting the conclusion that Red Bluff adopted the Plan under the procedure set forth in the Plan.

14